UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TYSON QUIGLEY, a/k/a Tyson Stands,<br><br>Defendant. | 3:23-CR-30022-RAL<br><br><br>OPINION AND ORDER PRELIMINARILY GRANTING GOVERNMENT'S MOTION IN LIMINE |

## I.      Background

A grand jury indicted Defendant Tyson Quigley, a/k/a Tyson Stands, ("Quigley") and Erwin White Lance ("White Lance") on one count of First-Degree Burglary and one count of Brandishing, Using, and Carrying a Firearm During and in Relation to a Crime of Violence.  Doc. 86.  The grand jury also indicted Quigley on one count of Prohibited Person in Possession of a Firearm.  Id.  Quigley and White Lance on January 1, 2023, in Todd County, in Indian country allegedly unlawfully entered and remained in the residence of Leslie Fool Bull with the intent to commit an assault and attempted, threatened, and did physical harm to Bryan Eagle Deer and Leslie Fool Bull in violation of various statutes.  Id.  According to the Superseding Indictment, Quigley on the same day possessed a Smith & Wesson pistol despite having a prior felony conviction and used and brandished the gun in relation to the alleged burglary.  Id.

Responding to the Fool Bull residence, Rosebud Sioux Tribe Law Enforcement Services (RSTLE) officers were told that the two men dressed in black with red bandanas entered the Fool

1

Bull home without permission, that White Lance had a bat and Quigley had a handgun, and that the two men left in a gold Chrysler 3000. Doc. 144 at 1–2. Quigley disputes the accuracy and reliability of those reports. Doc. 146. A RSTLE officer located Quigley and White Lance at a residence outside of which a gold Chrysler Sebring was parked. Doc. 144 at 2. A red baseball bat was in the front seat of the car and a handgun was in a seat pocket behind the driver's seat. Id.

After Quigley and White Lance were arrested, White Lance received a Miranda warning and gave a brief statement to RSTLE Special Agent Richard Kumley ("Agent Kumley") while in custody at the Rosebud Adult Corrections Facility. This Court listened to a recording of that interview at a March 2024 motion hearing. White Lance claimed that he was let in voluntarily to the home on January 1, 2023, by Ben Fool Bull, though Ben Fool Bull denies even being there, and others apparently would testify that Ben Fool Bull was not there. See Doc. 144 at 3. White Lance admitted entering the home but said Quigley was not with him. White Lance then invoked his Fifth Amendment right but in his next breath volunteered that he took responsibility for the gun recovered from the gold Chrysler. White Lance died during the pendency of this case. Doc. 128.

The United States filed a motion in limine to preclude admission of White Lance's statements to Agent Kumley. Doc. 143. Quigley opposed the motion in limine. Doc. 146. At the March 2024 hearing, this Court heard argument from counsel and preliminarily ruled on the motion in limine. This Order formalizes that ruling.

## II.    Legal Standard

Rulings on motions in limine are by their nature preliminary. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019). They "developed pursuant to the district court's inherent authority to manage the course of trials," Luce v. United States, 469 U.S. 38, 41 n.4 (1984), and

are "specifically designed to streamline the presentation of evidence and avoid unnecessary mistrials," Spotted Horse, 916 F.3d at 693. This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction. Motion in limine, Black's Law Dictionary (11th ed. 2019). Rulings on motions in limine necessarily occur before the nature and relevance of the evidence can be placed in full context. See Spotted Horse, 916 F.3d at 693. Therefore, a district court has broad discretion when ruling on motions in limine and retains the authority to revisit and change its rulings based on how the case unfolds. Luce, 469 U.S. at 41–42. If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain from this Court a contrary ruling.

### III.    Analysis

The United States argues that White Lance's statements to Agent Kumley are hearsay not within any hearsay exception. Doc. 144. Under Rule 801(c) of the Federal Rules of Evidence, hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." White Lance's statements to Agent Kumley were not made while testifying under oath in this case, and Quigley wants to admit White Lance's statements—that Quigley was not at the Fool Bull home on January 1, 2023, and that White Lance takes responsibility for the handgun—for the truth of the matters asserted. Thus, White Lance's statements are in fact hearsay.

Quigley asserts that White Lance's hearsay statements are admissible under Federal Rule of Evidence 804(b)(3) and the residual hearsay exception of Federal Rule of Evidence 807. Doc. 146 at 5. Rule 804 governs hearsay rule exceptions when the declarant is unavailable as a witness.

Having passed away, White Lance obviously is unavailable.  Rule 804(b)(3) allows admission of a "statement against interest" as a hearsay exception if the statement at issue is one that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Under Rule 804(b)(3)(A) only those portions of White Lance's statements that are self-inculpatory are admissible.  Williamson v. United States, 512 U.S. 594, 600–01 (1994) ("Rule 804(b)(3) . . . does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.").  Thus, White Lance's statement that Ben Fool Bull voluntarily let him into the Fool Bull house is inadmissible.  White Lance's statement taking responsibility for the gun was self-inculpatory; he later was charged with carrying and using a firearm in a crime of violence and aiding and abetting Quigley in doing so.  See Doc. 86.  White Lance's statement that Quigley was not with him when he entered the Fool Bull home on January 1, 2023, is at least arguably not directly inculpatory of White Lance, especially considering that White Lance implied that he was invited into the home.  Thus, at this time, this Court views one of the three main statements as inculpatory, one statement as arguably not inculpatory, and some statements as actually exculpatory when evaluating at this early time whether any of the proposed hearsay statements from White Lance qualify for possible admission under Rule 803(b)(3)(A).

Admission of hearsay under the statements-against-interest exception requires satisfaction of both subparts (A) and (B) of Rule 803(b)(3).  Subpart (B) requires "corroborating circumstances that clearly indicate [the statement's] trustworthiness, if it is offered in a criminal case as one that

tends to expose the declarant to criminal liability." Fed. R. Evid. 803(b)(3)(B). For instance, the United States Court of Appeals for the Eighth Circuit has upheld the exclusion of a co-defendant's out-of-court statement exculpating the defendant when there was contradictory evidence about and versions of the co-defendant's statements. United States v. Ironi, 525 F.3d 683, 686–87 (8th Cir. 2008). Before hearing any evidence whatsoever, this Court is poorly situated to determine if corroborating evidence exists to "clearly indicate" the statement's trustworthiness. The person to whom Quigley made the statement—Agent Kumley—will be the case agent for the United States at trial. This Court thus defers until trial, and likely until toward the end of testimony, a final ruling on whether any of White Lance's statements qualify for admission under Rule 804(b)(3).

The residual hearsay exception of Rule 807 allows admission of a hearsay statement "even if the statement is not admissible under a hearsay exception in Rule 803 or 804" if

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a). Admission of an out-of-court statement of an unavailable co-defendant, like White Lance, that allegedly is inculpatory seems covered by Rule 803(b)(3). Quigley argues that White Lance's statement is more probative on Quigley's lack of presence or involvement with the handgun than any other evidence because the alleged victims were intoxicated, unreliable, and inconsistent in their statements. Doc. 146. Whether any of White Lance's statements are the sort of "near miss" for admission under hearsay rules that merit admission under the residual exception is a decision better made at trial. After all, before hearing any evidence a court is ill positioned to evaluate whether there are sufficient guarantees of trustworthiness, including corroborating evidence, to support admission of White Lance's hearsay statements.

## IV.    Conclusion

Therefore, it is

ORDERED that White Lance's in-custody statements to Agent Kumley are not to be mentioned during voir dire, opening statements, or witness testimony, unless and until this Court outside of the hearing of the jury rules otherwise; thus, the United States's Motion in Limine Re: Hearsay Statements of the Co-defendant, Doc. 143, is granted to that extent.

DATED this 13th day of March, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE